# Jacob Shoemaker, assignee of Ambrose Vasse, a bankrupt *against* Joseph Norris.

The liens of tradesmen, who have built, repaired or fitted vessels, continue under the act of 27th March 1784 until such vessels proceed to sea, though the owner thereof becomes a bankrupt.

AMBROSE VASSE, owner of the schooner Friendship, employed a number of tradesmen of the description enumerated in the act of assembly, entitled, " An act to secure the persons em-" ployed in the building and fitting ships and vessels for sea, by " making the body, tackle, apparel and furniture of such ships " and vessels liable to pay the several tradesmen *em-    [*393 " ployed in building and fitting them for their work and " materials," passed 27th March 1784, in repairing the said vessel ; and one of the said persons on the 15th February last, filed his bill in the manner prescribed by the supplement to the said act passed 9th February 1793, against the said vessel, and had an attachment laid on her, and after due proceedings, an order or decree of the Court of Common Pleas of Philadelphia county was on the 4th March 1802 granted, directing the same vessel,

with her tackle, apparel, &c., to be sold to satisfy the demand of the libellant, Joseph Norris, shipwright, and thereupon process was issued to the sheriff of Philadelphia county, directed, commanding him to sell the same, (*prout* record and process,) which said order of sale was delivered to the said sheriff on the 4th March 1802, and he by virtue thereof advertised the said schooner for sale.

After making the decree, and before the sale of the said schooner, two other libels on different days, by four other persons of the description mentioned in the said acts of assembly, were filed, and attachments issued against the said schooner, and she was by virtue thereof also attached, but the said two last attachments are still depending.

On the 13th February 1802, Ambrose Vasse, owner of the said schooner, committed an act of bankruptcy, and on the same day a commission of bankruptcy issued against him, and he was declared a bankrupt ; and on the 23d of the same month, a provisional assignment of his estate and effects was made to the said Jacob Shoemaker, who gave notice to the sheriff not to proceed to sell the said schooner. But it was afterwards agreed, that the said sale should take place by virtue of the said process, without prejudice to the rights of either party, and the proceeds of the sale should be paid either to the provisional assignee, or the plaintiffs in the said attachments, as the court should direct.

It was further agreed, that all the work was done by the libellants, before the act of bankruptcy committed.

The question for the opinion of the court is, whether the said attachments being laid after the commission of bankruptcy had issued against the said Ambrose Vasse, will entitle the plaintiffs to recover ;—or whether they are entitled to more than a dividend in common with other creditors of the said bankrupt ?

If the court shall be of opinion in favour of the plaintiffs in the said attachments, it shall be held to extend to all those, who have a legal right by virtue of the said acts of assembly to any part of the proceeds.

> *W. Rawle*, for the assignee.
> *John C. Wells*, for the libellants.

*394]      *The plaintiff's counsel contended, that the attachment here, not having been executed, or even filed until after the act of bankruptcy committed, the case would be governed by the 31st section of the law of congress, passed on the 4th April 1800, (5 U. S. Laws, 67) which directs, that every creditor having security for his debt by judgment, statute, recognizance or specialty, or having an attachment under any of the laws of the individual states, unless there be an execution executed at the time of the bankruptcy, shall not be relieved for more than a rateable part of his debt, with the other creditors of the bank-

[Shoemaker, Assignee, v. Norris.]

rupt. The tradesmen here, had no liens for their debts as factors. Their claim to a preference is founded on their attachments.

The defendant's counsel insisted, that the section of the law of congress relied on was explained by the 1st section thereof.— Two of the clauses are, that if any merchant, &c. shall willingly or fraudulently procure him or herself to be arrested, or his or her lands, goods, money or chattels to be attached, sequestered or taken in execution,—or whose lands or effects being attached by process issuing out of, or returnable to any court of common law, shall not, within two months after written notice thereof, enter special bail and dissolve the same, shall be adjudged a bankrupt. These clauses are borrowed from the British statutes of 1 Jac. 1, c. 15, and 21 Jac. 1, c. 19. And it has been settled, that the word *attach* being coupled with arrest and sequester, the legislature meant that sort of attachment by which suits are commenced. Cowp. 428, which is recognized in Co. Bankrupt Laws, 76. The latter clause clearly assigns that idea to the term, and that it only means such process whereby an appearance is compelled. Congress may pass general laws within the limits of the constitution of the United States, but cannot repeal the municipal laws of different states. At least it may be said that to do this, the words of the act of the union must be clear and express.

By the law of this state of the 27th March 1784, § 2, (2 St. Laws. 186,) all ships and other vessels are made liable for the bills of tradesmen employed in building, repairing and fitting them for sea, in preference and before any other debts due and owing from the owners thereof. And the 6th section limits the continuance of such liability to the time which shall intervene between the contracting of such debts, and the time of such vessels proceeding to sea next after the work done, or the articles provided. The state admiralty court being abolished, the supplement to this act of the 9th February 1793, directed that the stipulation and libel should be in the Court of Common Pleas. 3 St. Laws, 296.

*Here then is a specific lien given by positive law in favour of a meritorious class of creditors, which is only [*395 discharged by the vessels proceeding to sea. The act of congress does not interfere with it. Liens are beneficial to trade, and consonant to natural justice; and courts lean in favour of them. 4 Burr. 2121. When goods have been sent by a bankrupt on board a ship to be conveyed to his correspondents abroad, the commissioners cannot seize and take them away without paying the freight. Co. Bankrupt Laws, 96, 7. Moll. 253. Suppose the case of wages due to seamen, and the owner becomes bankrupt before the voyage is performed, is not the vessel still chargeable with their wages?

The plaintiff's counsel replied, that the principal case was dis-

tinguishable from those referred to. He seeks not possession of goods, on which the libellants have either a general or special lien. The tradesmen here lost any lien which they ever might have had by their delivering up possession of the schooner. Doug. 101. 1 Stra. 557. 1 Atky. 234.

The court were clearly of opinion, that the implication arising on the act of assembly, was irresistible, that the lien of the tradesmen continued, until the vessel went to sea again. The act of congress effects no alteration therein.

Judgment for the defendant.